## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

INTEGRATED GLOBAL SERVICES, INC., )
                                   )
                      Plaintiff,   )
        v.                         )
                                   )   C.A. No. __3:20-cv-489__
CORMETECH, INC.,                   )
                                   )
                      Defendant.   )   JURY TRIAL DEMANDED
                                   )

## COMPLAINT

Plaintiff Integrated Global Services, Inc., by way of this Complaint against Cormetech, Inc., states as follows:

## THE PARTIES

1.      Plaintiff Integrated Global Services, Inc. ("IGS" or "Plaintiff") is a corporation organized and existing under the laws of Delaware, with a principal place of business at 7600 Whitepine Road, Richmond, VA 23237.

2.      On information and belief, Defendant Cormetech, Inc. ("Cormetech" or "Defendant") is a corporation organized and existing under the laws of Delaware, with a principal place of business at 11707 Steele Creek Rd., Charlotte, NC 28273.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

3.      Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

4.      This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271, that arises at least from Cormetech's manufacture, use, importation, sale, and/or offer for sale of certain Selective Catalytic Reduction

1

("SCR") catalyst and certain models of protective catalyst screens that infringe United States Patent No. 10,188,983 (the "'983 patent" and/or "the Asserted Patent").

5.     This is also an action for misappropriation of confidential business information and breach of implied confidentiality obligations under North Carolina law that arises from Cormetech's breach of confidentiality obligations and misappropriation and use of certain confidential and proprietary information, including drawings of IGS's proprietary catalyst screens, which Cormetech knowingly used to develop and significantly profit from a protective catalyst screen that is identical to IGS's catalyst screen.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court also has subject matter jurisdiction over IGS's state law claims, pursuant to 28 U.S.C. § 1367, which are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.  Additionally, or alternatively, this Court has subject matter jurisdiction over IGS's state law claims, pursuant to 28 U.S.C. § 1332, due to the parties' diversity of citizenship and an amount in controversy exceeding seventy-five thousand dollars ($75,000).

7.     On information and belief, Cormetech is in the business of manufacturing and selling SCR catalyst, providing catalyst regeneration and engineering services for the power, marine, industrial-process, refinery, and petrochemical markets, and regularly conducts business throughout the United States, including in the State of North Carolina and this judicial district, by selling SCR catalyst, including protective catalyst screens, directly to consumers.  On information

and belief, Cormetech derives revenue from the sale to consumers of SCR catalyst for reactors and related systems, including protective catalyst screens.

8. On information and belief, Cormetech offers for sale and sells within the United States and the State of North Carolina SCR catalyst and additional products for reactor systems, including protective catalyst screens and catalyst beds, that practice, and thereby infringe, certain claims of the Asserted Patent.

9. On information and belief, Cormetech has sold and is continuing to sell protective catalyst screens to customers with the expectation that such products will be used within infringing SCR catalyst within the United States and in the State of North Carolina.

10. On information and belief, Cormetech is subject to personal jurisdiction in this Court because Cormetech is domiciled in North Carolina, having North Carolina as its principal place of business. Moreover, Cormetech is further subject to personal jurisdiction in the Western District of North Carolina, consistent with the principles of due process, by virtue of Cormetech's above-referenced activities and contacts within the State of North Carolina, and further because Cormetech purposefully availed and avails itself of the privileges of doing business in North Carolina.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, on information and belief, Cormetech is incorporated in this judicial district.

**THE PATENT-IN-SUIT**

12. Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

13. On January 29, 2019, the United States Patent and Trademark Office duly and legally issued to Jeff Landers Shelton and Andrew Scott Kline U.S. Patent No. 10,188,983, titled

3

"SYSTEMS AND METHODS FOR CATALYST SCREENS IN SELECTIVE CATALYTIC REDUCTION REACTORS." The '983 patent is assigned to and owned solely by IGS. A copy of the '983 patent is attached hereto as Exhibit A.

14.     IGS is the lawful owner of all right, title, and interest in the '983 patent, including the right to sue and to recover for past infringement thereof.

15.     The '983 patent is valid and enforceable.

16.     The '983 patent is generally directed towards a system for use in selective catalytic reduction reactors. The system may include a catalyst bed and a screen located close to the catalyst bed in a manner so that flow of flue gas to the catalyst bed contacts the screen before it contacts the catalyst bed.

## FACTUAL BACKGROUND

17.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

18.     This action is brought to stop the unlawful and deceptive scheme, including wrongful and willful infringement and deceitful business practices, by Defendant to bypass the years of investment and research and development required to develop products that can legitimately compete with IGS's product offerings. IGS has grown into a global provider of large particle ash ("LPA") catalyst screens for use in selective catalytic reduction reactors. With over 100 successful screen and related system and component installations in service since 2003, IGS has been widely endorsed by leaders in the SCR catalyst industry. IGS's LPA catalyst screens and related cleaning systems are *turnkey* and include flow modeling, mechanical design, proprietary coating materials, rapid-response manufacturing, technical supervision, and installation.

19.     No later than 2016, IGS inventors conceived and developed a protective catalyst

4

screen system that was designed to replace the protective catalytic screen systems used in selective catalytic reduction catalysts. These innovative systems include LPA catalyst screens that offered significant improvements over previously existing catalyst screens. Due to the unique design, IGS's LPA catalyst screens improve airflow; resist ash buildup; do not permit LPA to pass through to the catalyst bed, protect the catalyst from being plugged; and protect the catalyst from air cannon blasts, all while improving the effectiveness of the air cannons and sonic horns.

20.      To protect its industry-leading technology, IGS filed a utility patent application, United States Patent Application No. 15/388,401 entitled "SYSTEMS AND METHODS FOR CATALYST SCREENS IN SELECTIVE CATALYTIC REDUCTION REACTORS," which issued as the '983 patent.

21.      Noticing the innovative nature of IGS, Cormetech embarked on a coordinated plan to capture market share from IGS. But it went about doing so in an unfair and improper manner.

22.      Beginning no later than September 2016, Cormetech's President and Chief Executive Officer, Michael Mattes, and Chief Financial Officer, Brett Ellis, engaged with IGS and began negotiating a joint venture arrangement in which Cormetech would resell IGS's proprietary catalyst screens. During these joint venture discussions, Cormetech verbally indicated that it (i) had no interest in going into the screen manufacturing business aside from its legacy pleated screens, which Cormetech had previously inherited through a merger with Evonik; (ii) would keep exchanged information confidential; and (iii) was only interested in reselling IGS's proprietary catalyst screens.

23.      During the finalization of the joint venture agreement (which was never formalized), Mr. Mattes assured IGS that it should act as if a partnership already existed. In accordance with this business relationship and the perceived good faith dealings, IGS shared

information relating to the sale of its product, which inevitably led to the disclosure of its pricing, market opportunities, and technical specifications. IGS additionally shared its valuable confidential and proprietary LPA screen filtration system for the Haldor Topsoe Module with Cormetech, marking it confidential and expressly stating that Cormetech must not copy the screen design. *See* Exhibit B (To Be Filed Under Seal).

24.     Specifically, the shared drawing of the screen design stated that "this drawing contains proprietary information which is the property of IGS Inc. It is furnished with the understanding that neither it nor any part thereof is to be copied or made available to other than the party to which it is furnished originally, that it is not to be used in any manner to the disadvantage of the above named company and that it is returnable on demand." *Id.*

25.     IGS's proprietary catalyst screen design was accepted and approved by Joe Skipper, a Cormetech Senior Account Manager. By approving the design, Mr. Skipper acknowledged the confidentiality obligations which included, without limitation, the obligation to not copy the proprietary drawings. *Id.*

26.     On information and belief, Mr. Mattes received IGS's confidential drawing of its catalyst screen design.

27.     Neither Cormetech, Mr. Mattes, nor Mr. Skipper ever questioned or objected to the confidentiality obligations or the proprietary nature of the drawing.

28.     Shortly after receiving IGS's proprietary catalyst screen design drawing, however, Mr. Mattes and Cormetech terminated the joint venture discussions with IGS and an agreement was not consummated permitting Cormetech to resell IGS's innovative catalyst screens. On information and belief, Cormetech subsequently established a screen manufacturing business and manufactured, offered for sale, and sold protective catalyst screens identical to IGS's proprietary

6

catalyst screen design.

29.     On information and belief, Cormetech deliberately solicited IGS's supplier, Hendrick Manufacturing Company, for flat/perforated plate screens identical to IGS's proprietary catalyst screen design and using identical materials.  Hendrick Manufacturing Company provided Cormetech a quote for the order and then subsequently noticed that the design was proprietary and recognized that the order would require use of stamping equipment belonging solely to IGS and revoked Cormetech's order.  Exhibit C.

30.     On information and belief, during the term of the Asserted Patent, Cormetech has manufactured products embodying the claimed invention of the Asserted Patent, including the protective catalyst screens sold or offered for sale to at least Basin Electric's Dry Forks facility, Duke Energy's Belews Creek facility, NRG Energy's Parish facility, and Southern Company. (collectively, the "Accused Products").  *See* Exhibit C; Exhibit D.

31.     On information and belief, during the term of the Asserted Patent, Cormetech has manufactured, offered for sale, sold, used, and/or imported SCR catalyst comprising a catalyst bed and a protective catalyst screen identical to IGS's catalyst screen and, therefore, embodying the claimed invention of the Asserted Patent.  On information and belief, Cormetech has also engaged in other activities infringing the same.

32.     On information and belief, and as informed by third parties in the industry, including personnel at Basin Electric's Dry Fork facility, Duke Energy's Belews Creek facility, Southern Company, and third party agents covering multiple plants across the United States,  the protective catalyst screens of the Accused Products are identical with respect to the structure, material, and arrangement of catalyst screens above the catalyst beds.  Exhibit C; Exhibit D.

7

33.    On information and belief, Cormetech has offered for sale and sold the Accused Products directly to consumers in the United States since at least as early as January 2019.

34.    Cormetech's acts have been without license or authority of Plaintiff.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,188,983

35.    Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

36.    Cormetech's acts constitute infringement of the '983 patent under 35 U.S.C. § 271(a). Cormetech has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '983 patent, by, without limitation, making, using, importing, selling, and/or offering for sale SCR catalyst in the Western District of North Carolina and elsewhere in the United States, that comprise protective catalyst screens that include all of the limitations of one or more of the claims of the '983 patent.

37.    Cormetech offered for sale, sold, and/or continues to offer for sale within the United States the accused SCR catalyst, comprising a catalyst bed and a protective catalyst screen identical to IGS's catalyst screen, which directly infringe the '983 patent.

38.    Cormetech's accused SCR catalyst were installed within the United States, including at least Basin Electric's Dry Forks facility and Duke Energy's Belews Creek facility, which directly infringes at least independent claims 1 and 13 and one or more dependent claims of the '983 patent.

39.    Cormetech's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages in an amount subject to proof at trial.

40.    Plaintiff has been, and continues to be, damaged and irreparably harmed by Cormetech's infringement, which will continue unless Cormetech is enjoined by this Court.

8

41.    On information and belief, Cormetech knew or should have known of the '983 patent at least since January 29, 2019, when the patent issued.  Plaintiff and Cormetech are direct competitors, and Cormetech knew or should have known about Plaintiff's patents related to SCR catalyst and related catalyst screen technology.

42.    On March 15, 2019, Plaintiff informed Cormetech of the '983 patent and that the Accused Products infringe claims of the '983 patent.  Exhibit E.  On information and belief, Plaintiff verbally informed Mr. Mattes and Cormetech about its pending patent application during the joint venture discussions on September 16, 2016.  Thus, on information and belief, Cormetech's infringement is, and will continue to be, willful and deliberate.

43.    Plaintiff's current infringement positions are based upon reasonable information and belief.  Plaintiff anticipates collecting additional evidentiary support through the discovery process.  Plaintiff reserves the right to assert any claims of the '983 patent against any additional infringing product identified during the discovery process.

44.    Cormetech's accused SCR catalyst infringe, literally or under the doctrine of equivalents, at least claim 1 of the '983 patent, which recites:

> 1. A system for use in a selective catalytic reduction reactor, the system comprising:
>
> a catalyst bed; and
>
> a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to support a weight of at least 400 pounds above the catalyst bed so that the weight is not imposed on the catalyst bed, the screen having a plurality of holes across its surface, wherein the screen is adapted to change velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises a 3 to 6% decrease in Root Mean Square (RMS) of overall velocity distribution of the flue gas.

9

45.     For example, on information and belief, Cormetech's SCR catalyst include a catalyst bed and a protective catalyst screen.  Additionally, IGS has been informed by third parties, including Basin Electric, Duke Energy, and Southern Company, that Cormetech's protective catalyst screens are identical to IGS's proprietary catalyst screens.   Exhibit C; Exhibit D. Therefore, on information and belief, Cormetech's Accused Products include a catalyst bed, wherein there is a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed. This configuration allows flue gas to flow through the screen before contacting the catalyst bed. The protective catalyst screen of the Accused Products is adapted to support a weight of at least 400 pounds.  The screen of the Accused Products has a plurality of holes across its surface.  This configuration changes the velocity distribution of the flue gas as it flows through the screen, comprising a 3% to 6% decrease in RMS of overall velocity distribution of the flue gas.

46.     Cormetech's accused SCR catalyst infringe, literally or under the doctrine of equivalents, at least claim 13 of the '983 patent, which recites:

> 13. A method for protecting a catalyst bed in a selective catalytic reduction reactor, the method comprising:
>
> disposing a screen at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to withstand a weight of at least 400 pounds without that weight being imposed on the catalyst bed, the screen having a plurality of holes across its surface;
>
> flowing the flue gas through the screen; and
>
> changing velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises 3 to 6% decrease in Root Mean Square (RMS) of overall velocity distribution of the flue gas.

47.     For example, Cormetech makes and/or installs SCR catalyst, and its customers use those catalyst, which include disposing a protective catalyst screen that is identical to IGS's

10

proprietary catalyst screens at a distance in a range of 1 in. to 12 ft. above the catalyst bed. This configuration allows flue gas to flow or pass through the screen before contacting the catalyst bed. The protective catalyst screen of the Accused Products is adapted to support a weight of at least 400 pounds. The screen of the Accused Products has a plurality of holes across its surface. This configuration allows for flue gas to flow through the screen. This configuration additionally changes the velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises a 3% to 6% decrease in RMS of overall velocity distribution of the flue gas.

## COUNT II
## INDUCEMENT TO INFRINGE U.S. PATENT NO. 10,188,983

48.    Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

49.    In violation of 35 U.S.C. § 271(b), Cormetech actively induces third-party retailers, distributors, and/or customers that purchase, offer for sale, sell, or use SCR catalyst that comprise a catalyst bed and a protective catalyst screen that satisfy all the limitations of one or more of the claims of the '983 patent, to directly infringe one or more claims of the '983 patent. Cormetech induces infringement, at least, by knowingly selling protective catalyst screens identical to IGS's catalyst screens with the intent that its customers directly infringe the '983 patent through sales and use of the SCR catalyst, comprising the protective catalyst screens, in the United States. On information and belief, Cormetech advertises, encourages, and instructs its customers to use the protective catalyst screens in a manner that constitutes infringement of at least independent claims 1 and 13 of the '983 patent.

50.    On information and belief, Cormetech knew that the sales of the protective catalyst screens would actively induce actual infringement of the '983 patent.

51.     Cormetech's activities injured and continue to injure IGS and, as a result thereof, IGS is entitled to recover damages adequate to compensate it for the infringement complained of herein, including lost profits, but in no event less than a reasonable royalty.

52.     On information and belief, Cormetech knew or should have known of the '983 patent at least since January 29, 2019, when the patent issued.  Plaintiff and Cormetech are direct competitors, and Cormetech knew or should have known about Plaintiff's patents related to SCR catalyst and related catalyst screen technology.

53.     On March 15, 2019, Plaintiff informed Cormetech of the '983 patent and that the Accused Products infringe claims of the '983 patent.  Exhibit E.  On information and belief, Plaintiff verbally informed Mr. Mattes and Cormetech about its pending patent application during the joint venture discussions on September 16, 2016.  Thus, on information and belief, Cormetech's infringement is, and will continue to be, willful and deliberate.

54.     Plaintiff's current infringement positions are based upon reasonable information and belief.  Plaintiff anticipates collecting additional evidentiary support through the discovery process.  Plaintiff reserves the right to assert any claims of the '983 patent against any additional infringing product identified during the discovery process.

55.     Cormetech's encouraged and/or induced its customers to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '983 patent, which recites:

> 1. A system for use in a selective catalytic reduction reactor, the system comprising:
>
> a catalyst bed; and
>
> a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to support a weight of at least 400 pounds above the catalyst bed so that the weight is not imposed on the catalyst bed,

the screen having a plurality of holes across its surface, wherein the screen is adapted to change velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises a 3 to 6% decrease in Root Mean Square (RMS) of overall velocity distribution of the flue gas.

56.    For example, Cormetech knew that its customers would use the accused protective catalyst screen in an SCR catalyst that comprised a catalyst bed and due to confidential information shared by IGS, knew that incorporating the accused protective catalyst screen would have a positive effect on the velocity distribution, as recited in claim 1 of the Asserted Patent. IGS has been informed by third parties, including Basin Electric, Duke Energy, and Southern Company, that Cormetech's protective catalyst screens are identical to IGS's proprietary catalyst screens. Exhibit C; Exhibit D. Therefore, on information and belief, Cormetech's induced infringement of a system comprising a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed. This configuration allows flue gas to flow through the screen before contacting the catalyst bed. The protective catalyst screen of the Accused Products is adapted to support a weight of at least 400 pounds. The screen of the Accused Products has a plurality of holes across its surface. This configuration changes the velocity distribution of the flue gas as it flows through the screen, comprising a 3% to 6% decrease in RMS of overall velocity distribution of the flue gas.

57.    Cormetech encouraged and/or induced its customers to infringe, literally or under the doctrine of equivalents, at least claim 13 of the '983 patent, which recites:

13. A method for protecting a catalyst bed in a selective catalytic reduction reactor, the method comprising:

disposing a screen at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to withstand a weight of at least 400 pounds without that weight being imposed on the catalyst bed, the screen having a plurality of holes across its surface;

13

flowing the flue gas through the screen; and

changing velocity distribution of the flue gas as it flows through
the screen, wherein the change in velocity distribution as a result of
the screen comprises 3 to 6% decrease in Root Mean Square
(RMS) of overall velocity distribution of the flue gas.

58.     For example, Cormetech knew that its customers use the accused protective catalyst

screens in SCR catalyst, which include disposing a protective catalyst screen that is identical to

IGS's proprietary catalyst screens at a distance in a range of 1 in. to 12 ft. above the catalyst bed.

This configuration allows flue gas to flow or pass through the screen before contacting the catalyst

bed.  The protective catalyst screen of the Accused Products is adapted to support a weight of at

least 400 pounds.  The screen of the Accused Products has a plurality of holes across its surface.

This configuration allows for flue gas to flow through the screen.  This configuration additionally

changes the velocity distribution of the flue gas as it flows through the screen, wherein the change

in velocity distribution as a result of the screen comprises a 3% to 6% decrease in RMS of overall

velocity distribution of the flue gas.

## COUNT III
## CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 10,188,983

59.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by

reference as if fully stated herein.

60.     In violation of 35 U.S.C. § 217(c), Cormetech offers to sell or sells within the

United States or imports into the United States a protective catalyst screen of the Asserted Patent,

constituting a material part of the invention in the Asserted Patent, knowing the same to be

especially made or especially adapted for use in an infringement of such patent, and not a staple

article or commodity of commerce suitable for substantial non-infringing use.  Cormetech

contributorily infringes, at least, by knowingly offering to sell or selling protective catalyst screens

identical to IGS's catalyst screens knowing that the screens are especially made for use in an

infringement of the Asserted Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, because on March 15, 2019, IGS sent Cormetech a letter informing Cormetech of the same. Exhibit E.

61.     Cormetech offered for sale, sold, and/or continues to offer for sale within the United States the accused protective catalyst screen, which became and continues to become material parts of SCR catalyst which directly infringe the '983 patent.

62.     Cormetech knew that its offers for sale, sales, and/or continuing offers for sale within the United States of the accused protective catalyst screen would lead to the direct infringement of the '983 patent.

63.     Cormetech's accused protective catalyst screens were installed in SCR catalyst within the United States, including at least Basin Electric's Dry Forks facility and Duke Energy's Belews Creek facility, which directly infringes at least independent claims 1 and 13 and one or more dependent claims of the '983 patent.

64.     Cormetech's accused protective catalyst screens are not a staple article or commodity of commerce suitable for substantial non-infringing use.

65.     Cormetech's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages in an amount subject to proof at trial.

66.     Plaintiff has been, and continues to be, damaged and irreparably harmed by Cormetech's infringement, which will continue unless Cormetech is enjoined by this Court.

67.     On information and belief, Cormetech knew or should have known of the '983 patent at least since January 29, 2019, when the patent issued. Plaintiff and Cormetech are direct competitors, and Cormetech knew or should have known about Plaintiff's patents related to SCR catalyst and related catalyst screen technology.

68. On March 15, 2019, Plaintiff informed Cormetech of the '983 patent and that the Accused Products infringe claims of the '983 patent. Exhibit E. On information and belief, Plaintiff verbally informed Mr. Mattes and Cormetech about its pending patent application during the joint venture discussions on September 16, 2016. Thus, on information and belief, Cormetech's infringement is, and will continue to be, willful and deliberate.

69. Plaintiff's current infringement positions are based upon reasonable information and belief. Plaintiff anticipates collecting additional evidentiary support through the discovery process. Plaintiff reserves the right to assert any claims of the '983 patent against any additional infringing product identified during the discovery process.

70. Cormetech's Accused Products contributorily infringe, literally or under the doctrine of equivalents, at least claim 1 of the '983 patent, which recites:

> 1. A system for use in a selective catalytic reduction reactor, the system comprising:
>
> a catalyst bed; and
>
> a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to support a weight of at least 400 pounds above the catalyst bed so that the weight is not imposed on the catalyst bed, the screen having a plurality of holes across its surface, wherein the screen is adapted to change velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises a 3 to 6% decrease in Root Mean Square (RMS) of overall velocity distribution of the flue gas.

71. For example, Cormetech knew that its customers' SCR catalyst include and/or would include a catalyst bed and a protective catalyst screen. Additionally, IGS has been informed by third parties, including Basin Electric, Duke Energy, and Southern Company, that Cormetech's protective catalyst screens are identical to IGS's proprietary catalyst screens. Exhibit C; Exhibit D.

16

Therefore, on information and belief, Cormetech knew that its customers' SCR catalyst include and/or would include a catalyst bed, wherein there is a screen located at a distance in a range of 1 in. to 12 ft. above the catalyst bed. This configuration allows flue gas to flow through the screen before contacting the catalyst bed. The catalyst bed of the Accused Products is adapted to support a weight of at least 400 pounds. The screen of the Accused Products has a plurality of holes across its surface. This configuration changes the velocity distribution of the flue gas as it flows through the screen, comprising a 3% to 6% decrease in RMS of overall velocity distribution of the flue gas.

72.     Cormetech's Accused Products contributorily infringe, literally or under the doctrine of equivalents, at least claim 13 of the '983 patent, which recites:

> 13. A method for protecting a catalyst bed in a selective catalytic reduction reactor, the method comprising:
>
> disposing a screen at a distance in a range of 1 in. to 12 ft. above the catalyst bed so that flow of flue gas to the catalyst bed contacts the screen or passes through the screen before the flow of flue gas contacts the catalyst bed or passes through the catalyst bed, the screen adapted to withstand a weight of at least 400 pounds without that weight being imposed on the catalyst bed, the screen having a plurality of holes across its surface;
>
> flowing the flue gas through the screen; and
>
> changing velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises 3 to 6% decrease in Root Mean Square (RMS) of overall velocity distribution of the flue gas.

73.     For example, Cormetech knew that its customers use the accused protective catalyst screens in SCR catalyst, which include disposing a protective catalyst screen that is identical to IGS's proprietary catalyst screens at a distance in a range of 1 in. to 12 ft. above the catalyst bed. This configuration allows flue gas to flow or pass through the screen before contacting the catalyst bed. The protective catalyst screen of the Accused Products is adapted to support a weight of at least 400 pounds. The screen of the Accused Products has a plurality of holes across its surface.

17

This configuration allows for flue gas to flow through the screen. This configuration additionally changes the velocity distribution of the flue gas as it flows through the screen, wherein the change in velocity distribution as a result of the screen comprises a 3% to 6% decrease in RMS of overall velocity distribution of the flue gas

**COUNT IV**
**MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION AND**
**BREACH OF IMPLIED CONFIDENTIALITY OBLIGATIONS**

74.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

75.     IGS developed an innovative protective catalyst screen for use in SCR catalyst. The drawing of the innovative protective catalyst screen for use in SCR catalyst contained confidential and proprietary information relating to IGS's catalyst screens. *See* Exhibit B.

76.     On the face of the drawing, the confidentiality obligation expressly stated that "this drawing contains proprietary information which is the property of IGS Inc. It is furnished with the understanding that neither it nor any part thereof is to be copied or made available to other than the party to which it is furnished originally, that it is not to be used in any manner to the disadvantage of the above named company and that it is returnable on demand." *Id.*

77.     On August 21, 2018, Cormetech and its representative, Mr. Skipper, approved and accepted the confidentiality obligations and proprietary nature of IGS's shared catalyst screen drawing. *See* Exhibit B.

78.     IGS shared this information in confidence with Cormetech as part of a business relationship to sell the screens because there was independent economic value to be derived from this information. Cormetech misappropriated this information by using the confidentially acquired information to copy the designs of IGS's protective catalyst screen, and Cormetech is now selling these screens with their SCR catalyst. Cormetech has breached its confidentiality obligations and

18

misappropriated the screen information because several customers, including personnel at Basin Electric's Dry Fork facility, Duke Energy's Belews Creek facility, and Southern Company have informed IGS of Cormetech selling screens identical to those being sold by IGS. *See* Exhibit C; Exhibit D. Cormetech only started selling these identical screens after the confidential business meeting with IGS, during which Mr. Mattes, President and CEO of Cormetech, acquired the information. Furthermore, Cormetech did not arrive at the design for their screens through independent development or reverse engineering because IGS shared the confidential business information regarding IGS's innovative catalyst screen on August 21, 2018, and Cormetech subsequently started making and selling the identical screens. Thus, there was not enough time between Cormetech acquiring the confidential screen information and Cormetech's own production of the screens for Cormetech to independently develop or reverse engineer the complex catalyst screen invention that IGS's team spent two years developing.

79. IGS developed these innovative catalyst screens to be provided to and installed in its customers catalytic reactors. IGS shared its proprietary designs with Cormetech in confidence during a business relationship to sell the screens. Cormetech instead took the designs, copied the screens, and is now selling the screens within its own catalytic reactor system and to its customers directly to have its customers install the proprietary IGS screens in their catalytic reactor systems. As indicated in paragraph 30 above, IGS has been informed by several customers, including Basin Electric, Duke Energy, and Southern Company, that they are receiving "identical" screens from Cormetech.

80. Cormetech's conduct is willful and malicious because, among other things, their conduct was expressly prohibited by the confidentiality obligation that was accepted and approved by Cormetech.

81.     Plaintiff's current positions are based upon reasonable information and belief. Plaintiff anticipates collecting additional evidentiary support through the discovery process. Plaintiff reserves the right to amend any claims of misappropriation against Cormetech identified during the discovery process.

82.     As a direct and proximate result of Cormetech's misappropriation and breach of its confidentiality obligations, IGS has suffered damages and is entitled to injunctive relief and compensatory damages in an amount in excess of seventy-five thousand dollars ($75,000).

**COUNT V**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**

83.     Plaintiff repeats and realleges the above paragraphs, which are incorporated by reference as if fully stated herein.

84.     Cormetech's conduct in misappropriating IGS's confidential and proprietary information and copying its innovative catalyst screens constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

85.     Cormetech's conduct was in or affecting commerce.

86.     As a direct and proximate result of Cormetech's unfair and deceptive conduct, IGS has suffered damages and is entitled to actual damages in an amount in excess of seventy-five thousand dollars ($75,000), as well as treble damages and attorneys' fees pursuant to N.C. Gen. Stat. §§ 75-16 and 16.1.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Cormetech holding that:

1) Cormetech has infringed the '983 patent;

2) Plaintiff be awarded royalty or lost profit-based damages adequate to compensate it for Cormetech's infringement of the '983 patent, such damages to be determined by a jury;

3) Cormetech, its officers, agents, employees, and those persons in active concert or participation with it or any of them, and its successors and assigns, be permanently enjoined from continued infringement of the '983 patent, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products that infringe the '983 patent;

4) All items that infringe the '983 patent be delivered to Plaintiff or destroyed;

5) Cormetech's infringement has been, and continues to be, willful;

6) Damages for infringement be trebled as provided for by 35 U.S.C. § 284 for Cormetech's willful infringement;

7) Cormetech be permanently enjoined and prohibited from using Plaintiff's confidential business information to complete or solicit, or attempt to solicit directly or indirectly, any customers and/or potential customers of Plaintiff;

8) This case be adjudged and decreed exceptional pursuant to 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees, expenses, and costs;

9) Plaintiff be awarded its actual damages as a result of Cormetech's unfair and deceptive trade practices in an amount to be proven at trial, and that such damages be trebled pursuant to N.C. Gen. Stat. § 75-16;

21

10)     Plaintiff be awarded costs and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 for Cormetech's unfair and deceptive trade practices or as otherwise permitted by law; and

11)     Plaintiff be awarded such other and further relief as this Court deems just and proper.

This the 4th day of September, 2020.

/s/ C. Bailey King, Jr.
C. Bailey King, Jr.
N.C. Bar No. 34043
J. Douglas Grimes
N.C. State Bar No. 32699
BRADLEY ARANT BOULT CUMMINGS LLP
214 North Tryon Street, Suite 3700
Charlotte, NC  28202
Tel.:  (704) 338-6000
Fax:  (704) 332-8858
E-mail:  bking@bradley.com
            dgrimes@bradley.com

*Attorneys for Plaintiff Integrated Global Services, Inc.*

OF COUNSEL:

Aaron L. Parker
Anthony J. Berlenbach
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
aaron.parker@finnegan.com
anthony.berlenbach@finnegan.com